Good morning, your honors. If I could have a few minutes in rebuttal, your honor. Of course. You can watch the clock. Maybe bring the microphone a little bit closer to you. There's a central issue in this case. There are several issues, but the one I really want to address at the very outset and emphasize is this whole problem, and I believe it's a problem, of multiple witnesses in a sexual assault case who are testifying as alleged victims to uncharged allegations of sexual abuse. That's the setting of this case. Mr. Barrett was charged with the rape and sexual assault of an alleged victim on multiple occasions over a weekend. She testified, RG, and she testified to what happened that weekend. I believe that there are major problems with her testimony. I believe that there are issues of real credibility, and there are issues with regard to whether the assaults occurred based on a lack of consent. But what happened here is that the government, and I believe realizing that they had maybe a case which was difficult to prove because it was, he said, she said, essentially, no eyewitnesses, no forensic evidence, a case that occurred years ago, a lack of reporting for four years, I believe, et cetera, et cetera. So they brought in three witnesses. One of least was brought in through a survey. SF testified, and she responded to a survey somehow that the victim in this case, RG, was involved in. Counsel, can I be, let me just cut to the chase here a little bit. We may or may not disagree with rules that permit uncharged conduct to be admitted in sexual assault cases. But we do have rules that permit it. And so the question here is whether the rules were violated, is it not? Yes. And I agree, Your Honor. I'm sorry. I should look at that right away. You have rule 14, 413. Rule 413 permits, as the court knows, testimony with regard to sexual assaults, additional ones, even if it relates to the propensity of the defendant. However, it's rule 403 that bars it if there's undue prejudice. So are you arguing that because there were three other victims who testified, that the cumulative effect of those three additional allegations violates 403? Yes. I believe 403 was violated in this case because those three witnesses did not satisfy the criteria of the LeMay case, which is the Ninth Circuit case, which enumerates the five factors that are necessary to, in fact, admit that testimony under 413. So I guess what I'm trying to figure out is, are you arguing that each one of them shouldn't have been admitted? Or was it the accumulation of all three of them being admitted that causes the problem? I believe the cumulative impact was highly prejudicial and did not justify its admission because its probative value was slight, if any. Well, then are you arguing that none of it should have been admitted? I didn't see... Well, I wanted to address this SF. SF was the one who testified to being at a friend's house in Bishop, and she stayed overnight. And my client, Mr. Barrett, was in a spare bedroom. He came over to her den where she was sleeping that night, and he did some things which are described in the briefs, which according to SF, constituted some sort of assault. She told him to stop, he stopped, and he left the room. That had no place in this case. That was not a sexual assault. As a matter of fact, there is a stipulation in this case where a witness by stipulation said that he and his wife, I believe it was a couple in North So, Your Honor, that's an example of an uncharged crime, so to speak, that was testified to by one of these alleged victims that should not have been admitted. But it could be argued to the jury that this doesn't amount to a hill of beans. Well, that's the argument, but then you have two others. And if I could address... So, sorry, can I just follow up on Judge Schreier's question, though? Were there specific separate objections at trial to each of the witnesses, or was it lumped together saying these three shouldn't come in? Well, I believe there was a motion in limine filed with the district court, and the argument of the defense was that those multiple witnesses should not have testified. So, is there a separate objection for what you were just saying? Do we have an objection for just that one attempted rape instead of rape, that that one shouldn't have come in? Was there ever a separate objection to that? I don't recall, Your Honor, except that when the motions in limine were denied by the district court, then of course what followed was the testimony of those three witnesses. So, I'm not sure that there was any additional objections made on the record. Obviously... So, what should we do if we think you might have a good argument as to that one person and her testimony? Maybe she shouldn't have come in. But if there was no separate objection to her separately, and we think the other ones could have come in, what are we supposed to do at this point? Well, I think the argument was made in the motion in limine by defense counsel as to each one of them, and S.F. was mentioned, and the facts regarding S.F., I think, were included in that motion. That's my recollection. But there were two others. But didn't S.F. testify that he got into bed with her, was touching her, fondling her breasts and genitals, and pushed his erection against her? Yes. Wouldn't that constitute a sexual assault? Well, but that's not the sexual assault that was at issue in this case. That was an advance, yes. It could be said that it's a sexual assault. She told these witnesses by stipulation that nothing happened. That was her testimony. But doesn't that come in as a... Her testimony, I mean, that was related in the stipulation that's in the record. But there were two other cases. He meets E.B. in a climbing gym, and they go hiking together, and they have sex. They enter into a consensual relationship. This is not what happened, allegedly, with regard to the victim in this case. This is Mr. Barrett having a consensual sexual relationship with E.B. And what happened months later, on one particular night, he's drunk, he's suicidal. E.B. calls and gets a friend over because she doesn't know what to do with this man. And apparently, in this drunken stupor, he gets on top of her, and without consent, according to her, they have sex. Finally, there's one other victim who testifies to these uncharged allegations, and that's J.V. J.V. meets my client through Tinder, an application that matches people. They meet, they hike, they go back to a climbing... Sorry, can I... You're going to run out of time, and I have a question about one of the other issues. You have this objection to the threats to these other witnesses and the evidence about threats coming in. I'm kind of confused on a similar question to what Judge Schreier asked about whether all of that was lumped together. What do we do if we think some of that evidence maybe shouldn't have come in, but other of that evidence that seems to have been all together was proper? If some of it was okay, but some of it wasn't, but it was only argued as a lump, what do we do now? Well, Your Honor, if I may, I think the admission of this so-called intimidation evidence in the 404B compounded the mistake made by the district court by allowing all three of these witnesses to testify because the intimidation that they claim was not a common scheme, and it wasn't consciousness of guilt. It occurred over a period of years when he was in a state of panic, and he learned that there was an investigation. Let's just say for a second that I agree with you. Let's say I agree with everything you just said, but that evidence was lumped together with the text to the victim here saying you wanted it. What if I think that evidence of those texts should come in, but this other threat stuff maybe shouldn't have, but it was only given as a package? I don't know what to do to separate it out given that it was all one in the district court. Well, I think the cumulative impact of allowing all this so-called intimidation evidence creates along with the multiple witnesses. Well, am I correct? It's an unfair trial. The intimidation and the obstruction, I'm interested in the sentence. Well, the obstruction was the sentence. Yeah. Because he, as the court indicates, his sentence was enhanced or the calculation by plus two for obstruction, and we don't believe there was obstruction here. That's what gave him a life sentence. Is that correct? He got a life sentence Wasn't the two-point enhancement for obstruction based on his conversation with somebody outside of the jail where he was asking them to fabricate evidence? Isn't that the two-point enhancement? Yes. I believe that was most of it. It's not the witness intimidation evidence? No. Right. I believe most of it, according to the PSR and according to the court, was the recorded phone calls which the court indicated in sentencing he had listened to, and there was talk between my client and a friend of his about a note. A note he believed was in the victim's car, and he wanted to retrieve the note. They went back and forth, and my client says, well, if the note's not there, maybe we could just prepare one because of what she said about me. It was all wrong, so we have a right to do it. Nothing ever happened. There was no action taken by him. Obstruction requires action. A two-point enhancement for obstruction does not require a conviction. It can be based on things that happened during the defendant being detained, which is what happened here. That's correct. No conviction is necessary, but when you look at the cases on obstruction, and I believe some were cited by the government, Leto and Perez, they all required action. You did witness tampering, or you prevailed on a witness not to testify. You did things that interfered in an investigation. Well, isn't attempt to do that enough, though, or are you saying attempt isn't enough? It has to actually interfere. There was no real attempt because no note was prepared. No note was ever looked at, reviewed. It was just a discussion. Why couldn't the threats to these witnesses count to support the enhancement for obstruction? Well, because I don't believe he ever attempted to obstruct any investigation in this case. In other words, before he was indicted, wasn't there something where he said that he was going to kill someone if they testified or gave statements about the rape? So why isn't that enough to support the instruction? What happened is part of a stipulation in this case. A doctor by name of Vargas in Mammoth Hospital received him in the emergency room. He was suicidal. He was drunk, and he said, I want to kill SF because they're conspiring with me to put me away or whatever. But she says in her stipulation that it never was relayed, and he never asked that it be to SF, who is one of the multiple witnesses. It was never received by her. She didn't get that threat from him. But other witnesses had the stalking, and I mean, there were other emails to friends and things. So it seems like there was enough evidence to support the two point. I'm really struggling with how there wasn't enough evidence of obstruction. Well, the stalking wasn't in terms of obstruction. I don't believe that was EB. And he went to her home. He stalked her apparently. He wanted to go out with her. He was a man who was desperate to see this woman again. And I don't know of any case that says that that constitutes obstruction. It's crazy behavior. Can you go back to the witness intimidation evidence for a minute? Um, what I'm trying to figure out, was there a motion in limine made to preclude the admission of that witness intimidation? Or was the motion in limine only to preclude evidence that he'd been convicted of witness intimidation? I think what happened, Your Honor, I think what happened with regard to the 404B on intimidation is that defense counsel, for some reason, did not argue that it didn't constitute intent, common scheme, lack of mistake. For some reason he didn't. But they said it's too prejudicial. That was their position in the motion in limine. So it was really a 403 motion, not a 404 motion. That's what happened. And are you trying to argue to us now that it was somehow plain error to not give a 404 instruction? Well, that would be part of our argument right now. But you haven't really specifically said that. It's sort of been lumped together into, it seems like what you've argued is more a 403. That's right. And I think to some extent I was reluctant because I realized what was in the record and I realized what defense counsel had done. And my feeling is, is that the prejudice argument prevails. It was unduly prejudicial. It didn't have the probative value necessary. But those other elements were not argued on the 404B. Okay. We'll still give you a few minutes for rebuttal, but you're way over your time. So why don't we wait and hear from the government? Good morning, your honors. May it please the court. Charles Campbell on behalf of the United States. I'll get to the 413 issue first, but I'd like to begin by correcting a statement about the record. With regards to the stipulation that was entered as to SF's testimony. The stipulation, it's on supplemental excerpts of SER 254 through 55. S, the stipulation says, recounts two parties' memory of the same phone call. SF recounted that she informed her friends that she had been assaulted by Mr. Barrett. The friends did not remember that specific allegation and instead just remembered that SF had told them that Barrett was dangerous and had assaulted others. To clear up the record there. Moving on to the question about the 413 and the admission of multiple witnesses. Judge D'Alba's order on this point correctly identified the applicable law. It exhaustively went through the facts and it reached a supportable conclusion that is ultimately well-founded, well-reasoned, and well-explained. And it was not an abuse of discretion. Moreover, to address the question about prejudice. Defense counsel's arguments at trial were that the 413 witnesses should be excluded as a block. Defense counsel did not preserve an objection to the admission of any individual 413 witness. I was just looking at the motion in limine though and it does seem, it did argue each of them and in the end the judge excluded one of the assaults against one of them. It seems like the judge did sort of understand that it could have been parsed witness by witness. There was witness by witness argumentation but the way that Judge D'Alba's order was laid out went through the LeMay factors and for each factor it assessed all three witnesses together. Which indicates that the way Judge D'Alba was approaching it was treating the witnesses as a um excluded the second assault for one of them. Yes your honor, Judge D'Alba excluded two assaults that EB had mentioned that she could testify about. Which does indicate that Judge D'Alba was paying attention to each witness. She had discretion with respect to everything I take. That is correct your honor. And it appears she considered each allegation separately and then cumulative effect of all of the allegations together based on how she ruled. That's correct your honor. Her order specifically identifies guiding precedent from other circuits as well as a case order in a case from the Northern District of California which had assessed similar facts. And it in looking at those cases and in the text of the order Judge D'Alba explicitly recognized and wrestled with the question of when having multiple 413 witnesses testify to the same persuasive point becomes needlessly cumulative. Yeah did Judge D'Alba handle the the pre-trial proceedings? Is that how this divided up and then Judge Mendez tried the case? Is that? That is correct your honor. Judge D'Alba was nominated to the Ninth Circuit after the first trial date was continued. Can I ask you about the intimidation evidence? I'm really struggling to understand how it could be consciousness of guilt. Can you try to explain it? Yes your honor. The government's theory on this point was that the defendant knew that he had sexually assaulted and or raped the women in question. And that he knew that if those assaults were reported to law enforcement that he would go to prison for a substantial period of time. The defendant thus believed the defendant conscious of his guilt believed that the best way to avoid being held accountable for his crimes was to intimidate the victims and prevent them from ever reporting. Thus the defendant engaged in this years-long pattern of behavior in which he intimidated victims made them aware that he was following them and was knew what their locations were made public threats. Well I mean let's separate a few things. So there's like sort of stalking which I don't know that it has anything to do with evidence of knowledge of guilt of a rape. And then there's threats to testify. And if someone is if you hear that someone is going to testify against you whether you think what they're saying is true or not true you might just want them not to testify against you. So I'm a little unsure why the idea that you tell try to stop someone from testifying against you shows that you think what they were going to say was true. Your honor is correct that there are multiple possible inferences that can be drawn from the fact that a defendant tries to persuade a witness not to take the stand. Judge D'Alba recognized that in her order but noted correctly that the existence of competing inferences does not go to the admissibility of the evidence under rule 404b but instead goes to the probative value of the intimidation evidence under the rule 403 balancing. And it actually is only 403 that we have at issue here the way this was preserved. So why is it probative enough to overcome the prejudice here? I mean it seems not very probative. Judge it's probative for two reasons your honor both of which Judge D'Alba identified in her order. The first is that the testimony that the testimony from each victim including the uncharged victims that they were intimidated shows the defendant's consciousness of guilt as to the assaults that he committed against those individual victims. That consciousness of guilt the fact that he did not want them to testify because he knew he did not want them to testify did not want them to report that shows the defendant was aware that he had assaulted each of jay well i guess that's the question again i mean what if there's just lots of different things you might if it's equally plausible that he would just didn't want them to testify whether it was true or not why is it very probative to show that he actually knew he was guilty there are different interpretations under the interpretation that the defendant argues in which your honor seems to be advancing then in that case the probative value would be limited but the government had a theory of consciousness of guilt they argued it to Judge D'Alba and Judge D'Alba saw merit in it and that was a theory in which that and that is where the probative value stems from the argument there being that his consciousness of guilt corroborates the testimony of each 413 victim and it also corroborates the testimony of KG you have to take it in the context i take it of of the witnesses entire testimony and i suppose the credibility would rise or fall on the whole thing that is correct your honor the 404 intimidation evidence was ultimately a small part of what EB and SF testified to and KG as well and so even the majority of the credibility analysis that the jury presumably did would have been based on their the majority of their testimony on the sexual assault right and how they presented on the stand factors like that it's worth noting that the other basis for probative value that Judge D'Alba identified in her order was this notion that there was a common scheme of the defendants to intimidate victims and that was specifically relevant as it relates to interpreting the defendants actions with regards to KG to evidence that defendant was conscious of his guilt with regards to the assaults on KG is especially probative because that's of course the charged conduct and the fact but there is a question which i think your honor has identified about how to interpret the defendant's actions the text messages he sends to KG for example the text message in 2019 when Kate when KG is in Kentucky and the defendant sends a message essentially saying I know you're here I see you that may or may not be interpreted as an act of intimidation but it is more likely to be interpreted as an act of intimidation given the evidence that the defendant had a common scheme to intimidate the women that he had assaulted based on a belief that they were conspiring to ruin his life and so those are the two bases for relevance under rule seems like a very thin hook to bring in this other evidence and so I'm wondering if it was plain error to not give at least an instruction a 404 instruction your honor it wasn't plain error not to give the instruction and specifically the instruction in this instance would have been used to guard against the risk of drawing of propensity inference based on character which is of course forbidden but the way that the evidence was introduced here did not lend itself to the jury drawing such an inference and that reduces the need for a prejudice and so why not I mean the jury hears that he's threatening people and stalking people why doesn't that just cause the jury to think this is a bad guy like maybe we don't we're not totally sure whether he did these rapes or not but clearly this is a bad guy so he probably did the rapes I mean why isn't that a reasonable thing that the jury might have thought from this two reasons your honor first is that the witness had already the jury had already heard from each witness evidence that the defendant had violently raped several women and violently sexually assaulted a third a fourth that the emotional impact of that evidence was no doubt substantial and would have outweighed any additional impact from learning that the defendant sent threatening text messages and engaged in acts of intimidation after the fact so the risk of prejudice was reduced for the intimidation testimony in light of the sexual violence testimony and then the second point is that the risk was because of the way that the testimony was introduced there was a reduced risk that the jury would have drawn the forbidden propensity inference which in this case would have been something along the lines of the defendant is the type of person who intimidated people and that makes it more likely that he committed intimidation that wasn't what the government was arguing and that particular given that the testimony from KG was already on the record and given that the acts of intimidation that KG testified to specifically things like the 2022 threat and or apologies like the 2019 text message in Kentucky those facts were on the record and were not so the did not contest so it does 404 is 404 limited to the idea that because you did a particular crime you would do that particular crime again or is it more general that because you did a particular crime you're a person of bad character and you're more likely to commit other crimes or for b1 holds it either inference is improper your honor so i i think your idea that it it's limited to whether he would have made threats again is sort of too narrow your honor is correct that there was the possibility that the jury would think that barrett is just a bad guy but again the fact that they'd heard in evidence of multiple violent sexual assaults that evidence means that the additional prejudicial value that would have from hearing the intimidation evidence was very low and so i mean but then that's just assumes that they believed i mean then you didn't need the intimidation evidence and it didn't need to be given i mean if you had your sexual assaults and everyone was going to believe it then that could have been enough on its own so i don't know how that it's like assuming that they definitely believed it and i think they may have and so then that may be right but it also seems that there was a fair amount of consent involved in most of these victims and so it doesn't seem like the most straightforward case your honor to the if you are correct about the limited probative value or limited if you are as the government mentioned the 404b the intimidation evidence played a relatively minor role in the case and if it was essentially a wash when it came to the jury's interpretation then that would suggest that there was no prejudice caused to the defendant by the admission even if the admission was an error and the two applicable standards of review for this issue are either abusive discretion or plain error depending on how you slice it and both to obtain a reversal there needs to be a showing of prejudice so your honor is correct that there was no prejudice cause well no i mean that's what you're arguing but i'm not sure i'm persuaded because i mean you're saying there can't have been prejudice because there was such good testimony about violent rape and i guess i'm just wondering if it's such strong evidence when each of the victims had consent also i'm confused as to what your honor means by the victims consenting i mean so the it's the victims testified to horrific acts but they also most of them anyway had consensual relationships with the defendant either before or after or both and that seems to complicate the government's effort here i mean it just makes it a more complicated case for the jury to parse what exactly happened in these relationships i think you could tell me why that's not true but it seems like this isn't the easiest case to prove given the consent your honor is correct that two of the 413 witnesses eb and jv testified about having a consensual relationship with the defendant outside of the scope of the assault i believe that makes the evidence of intimidation more probative and it strengthens the inference of consciousness of guilt because the testimony that the witnesses provided shows that the defendant's conduct and specifically his acts of intimidation changed after the consensual relationship ended and once there became a threat that the defendant that the victims might report what the defendant had done which is to say while the defendant was in a relationship with these women he had control over them and could prevent them from reporting that way he did not need to intimidate them but then once that relationship ended the defendant needed to exert new control and so resorted these acts of intimidation but both ultimately show consciousness of guilt and both support the probative value of the 403 intimidation evidence i can see that i'm out of time if there's no can you just uh the the um the the criminal history adjustment that gave him the not the what the adjustment that gave him the life sentence was based on what which conduct your honor the obstruction enhancement in the psr had two independently sufficient bases one was the threat the defendant had made and the other was the attempt to fabricate evidence judge mendez's statements during the sentencing hearing indicate that he applied the sentencing the obstruction enhancement on both bases so in instance the threats would be those listed in the psr but specifically acts of like the defense admission in paragraph 28 of the psr that he'd made posts online and had asked other individuals to message fsf with the subjective intent to intimidate her and then with regards to the fabrication evidence that would be the january calls to mw in which the defendant not very subtly instructed mw to create a note and plant it in the defendant's truck okay but that had that was independent of the evidence with respect to um the uh that uh that was admitted in the trial that is correct right and the evidence of threats didn't need to be admitted at the trial to have an enhancement eventually be given that is correct honor so no further questions then i'll ask the court to affirm thank you thank you let's put three minutes on the clock for rebuttal please i again want to clarify the issue with regard to what sf said in a stipulation which is in the record ser 254 255 cited by the government she is part of that stipulation and she said uh that she told these friends that mr barrett sexually assaulted me that's part of the stipulation i didn't read that because he says something different that's what i wanted the court to hear he says on page 255 we asked miss f whether mr barrett had done anything to her she stated that he had not she stated that barrett had made a pass at her and she had shut him down this is the third of the multiple witnesses and she testified and i say respectfully uh that she should have been excluded at the very minimum she should have been excluded i didn't get a chance to fully say what happened with regard to jv just very quickly she meets him tinder they go to a community house um he wants to go into a shower she says come into my bedroom take a shower uh he gets into bed with her to start kissing and there's sex without consent according to her but what happens after that she has a consensual relationship with him for three months right after the so-called rape three months they're together what i am submitting to the court is that these are not similar to what's charged with regard to rg there was no relationship with rg and therefore these three should not have been testifying under le may is it similar though in the sense that um i think it's kg not rg that kg i'm sorry um can did consensual activity with him not sexual activity but she goes hiking again she goes to a shower she she does a lot of consensual things with him so i in that sense it is similar well i think it goes to her credibility and the credibility of her story because she's with other hikers she's meeting other people she goes to breakfast with him at the end of the weekend they see their friends they're all together nothing is said and she does text her parents that she's having a beautiful weekend and then afterward she tells her friend gee i hope and i'm paraphrasing i hope i didn't mess things up because of the way i left it that's her text after that finally i just want to say one thing the government had a chance to talk about intimidation and they said in their answering brief as follows page 10 when it comes to sf they say his threats were explicit he told a mutual friend he was going to kill sf that's a that's dr vargas dr vargas said he never asked that it be communicated to her with regard to eb it's stalking he follows her he goes to a workplace she takes out a restraining order it's a domestic type of situation um kg finally according to the government this is the intimidation he texts her and he says could we meet again could we be friends three years later he indicates to her that he wants to join her in a climbing party um this never should have come in and i think the cumulative impact of not only the three additional witnesses but then the intimidation testimony which made him to be a bad person a bad character just led to a trial which violated his due process it was unfair i'll submit thank you both sides for the helpful arguments this case is submitted and we are adjourned for the day
judges: SCHROEDER, FRIEDLAND, Schreier